Daniel L. Bonnett (AZ #014127)
Mirra L. Carrier (AZ #038053)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
dbonnett@martinbonnett.com
mcarrier@martinbonnett.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Moltz-Sandhu, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Global Tel*Link Corporation, also known as ViaPath Technologies; John and Jane Does I-V; and XYZ Corporations, | **JURY DEMANDED** |
| Defendants. | |

This is an action for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-6(b).

2. This Court has personal jurisdiction over Defendant, Global Tel*Link Corporation, also known as ViaPath Technologies ("GTL"), because it is physically present, conducts business or committed one or more of the acts or omissions during the relevant timeframe within the District as alleged herein.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims as alleged

herein occurred in this District.

4. Plaintiff Rebecca Moltz-Sandhu, formerly known as Rebecca Moltz-Landers ("Plaintiff" or "Ms. Moltz-Sandhu") timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging Title VII violations on or about June 30, 2022. Plaintiff timely commenced this action within 90 days of receipt of her EEOC Notice of Right to Sue.

**PARTIES**

5. During the relevant timeframe, Plaintiff was and is a resident of Arizona and resides in Maricopa County and was employed by and worked for Defendant GTL from August 2014 to until her involuntary termination on November 2, 2021.

6. At all times relevant, Plaintiff was an "employee" of Defendant GTL within the meaning of Title VII, 42 U.S.C. § 2000e(f).

7. At all relevant times, Defendant GTL was Plaintiff's "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b). Upon information, Defendant GTL is a foreign corporation which transacted and continues to transact business in Maricopa County, Arizona. During the relevant timeframe, Plaintiff worked remotely for GTL primarily from her home in Maricopa County, Arizona with GTL's knowledge and consent. Upon further information, Defendant GTL's registered agent for service of process is Incorp Services Inc., 8825 North 23rd Avenue, Suite 100, Phoenix, Arizona 85021.

8. This Court has personal jurisdiction over Defendants, John and Jane Doe I-VI and XYZ Corporations, all of whom, upon information and belief, are individuals or entities whose liability-creating conduct occurred within the District of Arizona, whose exact identities are not presently known but who Plaintiff will seek to substitute once known.

**FACTUAL ALLEGATIONS**

9. Ms. Moltz-Sandhu worked as an Account Manager for GTL from August 2014 until her involuntary termination in November 2021.

10. GTL is a telecommunications company that, *inter alia*, provides services to

incarcerated individuals. As an Account Manager, Ms. Moltz-Sandhu was responsible for managing GTL's relationships with her assigned accounts, which consisted primarily of correctional facilities in California.

11. During her tenure at GTL, Ms. Moltz-Sandhu met and often exceeded performance goals and expectations communicated to her by GTL.

12. In or about February 2021, Robert Openshaw ("Mr. Openshaw") became Ms. Moltz-Sandhu's immediate supervisor.

13. Mr. Openshaw began to engage in discriminatory conduct on the basis of sex, female, that was directed at Ms. Moltz-Sandhu and at least one other female employee, Account Manager Colleen Gullage, which involved treating Plaintiff and her female coworker less favorably than similarly situated male employees.

14. Examples of this conduct include, but are not limited to, showing favoritism and engaging in disparate treatment with regard to scheduling and assigning work and attendance at conferences, including travel notifications and making arrangements for out-of-town travel that disfavored and/or disadvantaged Ms. Moltz-Sandhu and her female colleague in performing their respective job duties.

15. This conduct included daily, unwarranted and baseless accusations of poor character and performance as well as aggressive and insulting remarks directed at Ms. Moltz-Sandhu, attempting to sever or disrupt her lines of communication with the points-of-contact on her assigned customer accounts, interfering with or depriving her of resources she needed to carry out her duties and responsibilities, and unjustly attempting to internally and publicly blame her for violations of company policy and alleged unsatisfactory client relations that were actually committed or caused by Mr. Openshaw. Upon information and belief, Mr. Openshaw attempted to justify his disparate treatment of Ms. Moltz-Sandhu by falsely alleging that she had harmed client relationships that were, instead, the result of his own acts and omissions.

16. By way of example but not all-inclusive, Mr. Openshaw interfered with Ms. Moltz-Sandhu's client relationships by telling her clients on at least two occasions, about

which she later learned, that Plaintiff was incompetent. Mr. Openshaw also refused to discuss conference scheduling with Ms. Moltz-Sandhu on several occasions that she presently recalls in May, July and September 2021, offered similarly situated male employees opportunities to attend conferences for which Ms. Moltz-Sandhu was better suited due to her relevant work experience and assigned region/client base, and offered Ms. Moltz-Sandhu the opportunity on short notice presumably if her male counterparts were unavailable or had declined. The short notice made it impractical and, at times impossible, to make necessary travel and family arrangements.

17. Mr. Openshaw also told Ms. Moltz-Sandhu that she was prohibited from discussing any and all of her workplace issues with GTL's Human Relations Department ("HR") and ordered her to direct any issues she had to him alone. Upon information and belief, Mr. Openshaw did not place similar restrictions on similarly situated male employees.

18. Notwithstanding Mr. Openshaw's effort to preclude Plaintiff from making internal complaints of unlawful discriminatory treatment, on September 21, 2021, Ms. Moltz-Sandhu submitted a formal complaint to GTL's HR Department alleging gender discrimination and related misconduct that created a hostile work environment and named Mr. Openshaw as the person responsible for the unlawful discriminatory treatment.

19. After Ms. Moltz-Sandhu submitted her complaint to HR, she experienced a substantial increase in the frequency and severity of the hostile and discriminatory treatment from Mr. Openshaw which continued to escalate.

20. Examples of this escalation include, but were not limited to, Mr. Openshaw interfering with and eventually derailing Ms. Moltz-Sandhu's promotion to an open position for which she was qualified, had been interviewed, and was told by Director of Client Partnership Tom Wagg that she was the "ideal candidate" who he intended to select for the open position.

21. Mr. Openshaw's discriminatory and retaliatory animus against Ms. Moltz-Sandhu was demonstrated by, among other things, the fact that he publicly announced in

a degrading and humiliating manner in a meeting in front of a number of Plaintiff's peers that was completely unrelated to the promotional opportunity she had been told was hers that Ms. Moltz-Sandhu had not been selected for the position. There was no legitimate reason for Mr. Openshaw to have shared this information with Plaintiff's coworkers or to do so in the manner in which it was done.

22. As part of HR's investigation into Ms. Moltz-Sandhu's complaint of unlawful discrimination, HR Vice President Karen Miller conducted an interview of Tom Donahue, an Account Manager on Ms. Moltz-Sandhu's team, on or around November 1, 2021.

23. Upon information and belief, Mr. Donahue corroborated Ms. Moltz-Sandhu's claims of discrimination and attested that Mr. Openshaw treated the female members of the team less favorably than the male employees. Upon further information, Mr. Donahue also stated that he had consistently observed Mr. Openshaw make disparaging comments about Ms. Moltz-Sandhu's character and performance during team meetings and would frequently interrupt her anytime she tried to provide input, effectively preventing her from speaking or participating in a meaningful or constructive manner.

24. On or about November 2, 2021, Ms. Moltz-Sandhu was contacted by Ms. Miller and informed that the HR investigation into her complaint against Mr. Openshaw was not yet complete. Notwithstanding that the investigation was still ongoing, Ms. Miller informed Ms. Moltz-Sandhu that her employment was being terminated effective immediately and claimed that it was due to "performance issues" purportedly raised by Mr. Openshaw.

25. Ms. Moltz-Sandhu had been given no forewarning by Mr. Openshaw or anyone else at GTL of any claimed performance deficiencies nor was she provided an opportunity to respond to them whether in the context of the ongoing investigation of her discrimination and retaliation complaint or otherwise. Ms. Moltz-Sandhu had never been previously subject to any unsatisfactory performance review, corrective action or performance improvement plan.

26. During this same November 2, 2021 conversation, Ms. Moltz-Sandhu was told by Ms. Miller that Plaintiff's complaint of discriminatory treatment was "unsubstantiated to this date," despite the fact that Mr. Donahue had been interviewed by GTL HR and, upon information, had given statements the day before corroborating gender-based discriminatory conduct on the part of Mr. Openshaw.

27. Additionally, the admittedly incomplete investigation and decision to terminate Ms. Moltz-Sandhu occurred a full week before HR's previously scheduled interview with Account Manager Colleen Gullage, an identified percipient witness to the discriminatory treatment about which Ms. Moltz-Sandhu had complained to GTL HR.

28. In addition to Ms. Gullage having been mentioned as a person with relevant information by Mr. Donahue, she had also independently reported Mr. Openshaw earlier that same year for alleged gender-based discrimination involving similar, if not identical, misconduct on the part of Mr. Openshaw as the acts and omissions forming the basis of Ms. Moltz-Sandhu's grievance.

## COUNT I
### (Unlawful Discrimination – Title VII, 42 U.S.C § 2000e-2(a))

29. Plaintiff repeats and realleges the previous paragraphs as though set forth fully herein.

30. 42 U.S.C. § 2000e-2(a)(1), Title VII of the Civil Rights Act of 1964, as amended, provides in relevant part:

It shall be an unlawful employment practice for an employer -

> [T}o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

31. 42 U.S.C. §2000e-2(a)(2) provides, in relevant part, that it is an unlawful employment practice for an employer:

> [T]o limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color, sex or national origin.

32. Defendant GTL unlawfully discriminated against Plaintiff by committing one or more of the following acts or omissions:

   a. Engaging in favoritism and disparate treatment with regard to scheduling and assigning work and attendance at conferences, including travel notifications and making arrangements for out-of-town travel that disfavored and/or disadvantaged Ms. Moltz-Sandhu in performing her job duties;

   b. Engaging in discriminatory conduct that included daily, unwarranted and baseless accusations of poor character and performance as well as aggressive and insulting remarks directed at Ms. Moltz-Sandhu, attempting to sever or disrupt her lines of communication with the points-of-contact on her customer accounts, interfering with resources she needed to carry out her duties and responsibilities, and unjustly attempting to publicly blame her for violations of company policy and poor client relations that were actually committed or caused by Mr. Openshaw;

   c. Informing Ms. Moltz-Sandhu that she was prohibited from discussing any and all workplace complaints with GTL's HR Department, while not placing similar restrictions on similarly situated male employees;

   d. Failing to conduct a good faith, thorough investigation in Plaintiff's allegations of discrimination on the basis of sex; and

   e. Failing to take prompt, effective and appropriate remedial measures to eliminate the discrimination on the basis of sex.

33. By virtue of the foregoing, Defendant GTL caused Plaintiff to suffer one or more of the following adverse employment actions:

      a.      Unlawfully terminating Plaintiff; and

      b.      Treating Plaintiff less favorably than similarly situated male employees, subjecting Plaintiff to discrimination on the basis of sex and failing to take prompt, remedial action to eliminate such discrimination.

34. By virtue of the foregoing, Plaintiff has suffered and will continue to suffer damages including, but not limited to, lost income and benefits, emotional distress, mental anguish and injury to reputation entitling her to recover from Defendant GTL actual and compensatory damages and equitable relief including all economic and non-economic losses, reinstatement, injunctive relief and other equitable remedies.

35. The acts and omissions of Defendant GTL as alleged herein were undertaken with a wilful intention to violate Plaintiff's federally protected rights or in reckless disregard to those rights so as to give rise to a claim of punitive damages.

36. Plaintiff has retained the services of an attorney to prosecute her Title VII claims as alleged herein and is entitled to recover her attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988(b) & 2000e-5(k).

## COUNT II
### (Unlawful Retaliation – Title VII, 42 U.S.C § 2000e-3(a))

37. Plaintiff repeats and realleges the previous paragraphs as though set forth fully herein.

38. 42 U.S.C. § 2000e-3, Title VII of the Civil Rights Act of 1964, as amended, provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

39. After Plaintiff opposed discrimination based on sex as described herein, reported her concerns of sex discrimination to GTL's Human Resources Department and personnel, and participated in the internal investigation of her complaint, Defendant GTL

unlawfully retaliated against Plaintiff by committing one or more of the following acts or omissions resulting in one or more of the following adverse employment actions:

    a.    Failing to fully investigate and take prompt, effective and appropriate remedial measures to eliminate the sexually hostile work environment;

    b.    Allowing Mr. Openshaw to interfere with and derail Plaintiff's promotional opportunities;

    c.    Failing to follow through with the promotion for which Plaintiff was qualified, had been interviewed and advised was hers; and

    d.    Unlawfully terminating Plaintiff.

40. By virtue of the foregoing, Plaintiff has suffered damages including, but not limited to, lost income and benefits, emotional distress, mental anguish and injury to reputation entitling her to recover from Defendant GTL actual and compensatory damages and equitable relief including all economic and non-economic losses, reinstatement, injunctive relief and other equitable remedies.

41. The acts and omissions of Defendant GTL as alleged herein were undertaken with a wilful intention to violate Plaintiff's federally protected rights or in reckless disregard to those rights so as to give rise to a claim of punitive damages.

42. Plaintiff has retained the services of an attorney to prosecute her Title VII claims as alleged herein and is entitled to recover her attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988(b) & 2000e-5(k).

WHEREFORE, Plaintiff requests the following relief:

A. A declaration that Defendant GTL unlawfully discriminated against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-2;

B. A declaration that Defendant GTL unlawfully retaliated against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3;

C. An award of damages and judgment in favor of Plaintiff and against Defendant GTL for its violations of Title VII as alleged herein including all economic, non-

economic, compensatory and punitive damages to the fullest extent permitted by law;

D. An award of attorneys' fees and costs in favor of Plaintiff and against Defendant GTL pursuant to 42 U.S.C §§ 1988 & 2000e-5(k); and

E. Such equitable relief as the Court may deem just and proper including reinstatement, backpay and injunctive relief.

F. Plaintiff hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated this 16th day of January, 2024.

**MARTIN & BONNETT, P.L.L.C.**

By: /s/ Daniel L. Bonnett
    Daniel L. Bonnett
    Mirra L. Carrier
    4647 North 32nd Street, Suite 185
    Phoenix, AZ 85018
    (602) 240-6900
    *Attorneys for Plaintiff*